**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION**

ROBERT TEBBENS,                           )
                                          )
        Plaintiff,                        )
                                          )     Case No. 23-cv-430
v.                                        )
                                          )     The Hon. Judge Robert Blakey
CITY OF CHICAGO, ILLINOIS;                )
ANNETTE NANCE-HOLT;                       )     Mag. Judge Jeffrey Cole
MARC FERMAN; BRIAN HELMOLD; and,          )
THOMAS CARBONNEAU,                        )
                                          )
        Defendants.                       )     **Jury Trial Demanded**

## SECOND AMENDED COMPLAINT

Robert Tebbens ("Plaintiff" or "Tebbens"), by and through his undersigned counsel, Cass T.

Casper, DISPARTI LAW GROUP, P.A., states as follows against the City of Chicago, Illinois

("Defendant" or "City"), Annette Nance-Holt, Marc Ferman, Thomas Carbonneau, and Brian

Helmold.

## JURISDICTION AND VENUE

1.  Jurisdiction of this court arises under 28 U.S.C. §§ 1331 and 1337 and pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), as amended, and the First

Amendment of the United States Constitution.

2.  Jurisdiction to aware attorney's fees arises under Title VII and 42 U.S.C. § 1988.

3.  Venue is proper under 28 U.S.C. § 1391 because the events giving rise to the claims

herein have occurred in this judicial district, and because Defendant operates within this judicial

district.

## PARTIES

4.  Robert Tebbens is a resident of this judicial district and a former employee of Defendant.

5.  The City is a municipal corporation under the laws of the state of Illinois and is Plaintiff's

former employer.

6. Annette Nance-Holt is the Fire Commissioner for the City of Chicago and is responsible for the day-to-day operation and administrative oversight of the Chicago Fire Department ("CFD").

7. At all times relevant, Nance-Holt acted under color of law.

8. Marc Ferman ("Ferman") is a Deputy Fire Commissioner with the City of Chicago and within Plaintiff's chain-of-command.

9. At all times relevant, Ferman acted under color of law.

10. Brian Helmold ("Helmold") is a Deputy Fire Commissioner with the City of Chicago and within Plaintiff's chain-of-command.

11. At all times relevant, Helmold acted under color of law.

12. Thomas Carbonneau ("Carbonneau") was a Deputy District Chief with the City of Chicago and within Plaintiff's chain-of-command.

13. At all times, Carbonneau acted under color of law.

14. Defendants harmed Plaintiff in this judicial district.

## FACTS COMMON TO ALL COUNTS

15. Until his termination on September 27, 2022, Plaintiff was a Fire Captain with the CFD, a rank he had held since in or about February 2018.

16. In or about October 2021, a document titled "City of Chicago COVID-19 Vaccination Policy" began circulating throughout the CFD that purported to represent a policy of Defendant outlining vaccination and vaccination reporting requirements for all City employees.

17. The document required, *inter alia*, employees to be vaccinated or to undergo periodic testing for COVID-19, and to report their vaccination status, or otherwise to obtain a medical or religious exemption from testing and reporting.

18. The document also required employees to report their test results using the COVID-19

2

Employee Testing Portal ("Testing Portal").

19. On December 14, 2021 and again on February 25, 2022, Plaintiff submitted a completed COVID-19 Vaccine Religious Exemption Request ("Exemption Request") identifying precepts of Christianity preventing him from obtaining the COVID-19 vaccine.

20. Plaintiff's Exemption Request was assigned Request Number VAX-8188.

21. In his Exemption Request, Tebbens included the following citations from scripture to support that his religious beliefs conflicted with his obtaining the COVID-19 vaccine:

> *I believe that under God, and the freedom given to us in Christ, we have bodily autonomy. I sincerely believe that God made us in His image (see Genesis 1:27) and His most common commandment given to His people, is to practice faith over fear, a commandment consistently made in scripture. See, e.g., Psalm 34:4, Matthew 6:34, Joshua 1:9,2, Timothy 1:6-7, 1 John 4:18, Proverbs 3:7, John 14:27, Romans 8:38-39. Further, "Cursed is the one who trusts in man who draws strength from mere flesh and whose heart turns away from the Lord." See Jeremiah 17:5.*

> *In being created in God's image, I am given the gift of His intended immune system. Moreover, having recovered from COVID-19 through His good grace, I believe it is sacrilegious and a violation of my sacred relationship with God to violate what he has given me by showing a lack of faith in His plan.*

> *Therefore, it is my firmly held religious belief that receiving this immunization shows God that I don't have faith in His promise to protect me and shows that I trust the works of man more than I trust the armor of God and his promise of protection. I believe that with God all things are possible, including protection from illness. Maintaining faith in His plan is an important part of my covenant between me and the Holy Father.*

22. Tebbens also articulated his religious beliefs to his supervisors on multiple occasions in 2021 and 2022 separate and apart from his Exemption Request, including to Deputy Fire Commissioner Ferman and to Deputy District Chief Carboneau.

23. On February 28, 2022, Defendant Chicago approved Plaintiff's Exemption Request VAX-8188 **_as to the entire Vaccination Policy_**, as follows:

**City of Chicago**
**COVID-19 VACCINE EXEMPTION DETERMINATION NOTICE**
EMPLOYEE INFORMATION

**Name: Robert Tebbens**
**Department: CFD**
**Job Title: Captain/EMT**
**Request Number: VAX- 8188**

DETERMINATION

Dear Employee:

Your request for a religious exemption from the City of Chicago's Mandatory COVID-19 Vaccination Policy has been:

☒      Approved

☐      Denied

**If your request has been approved, you may be required to follow additional health and safety measures while at work. Those measures are described below:**

24. The foregoing exemption[1], to be clear, exempted Plaintiff from the following:

     a.   Vaccination;

     b.   Reporting; and,

     c.   All other aspects of the Vaccination Policy.

25. On various dates in or about 2021 and 2022, CFD would conduct "portal interviews" of its employees wherein it would require fire companies to report in-person to their assigned firehouses and state who had reported their vaccination status on the Portal and who had not.

26. Due at least to his religious exemption, Plaintiff did not make reports on the Testing Portal because the exemption was "from the City of Chicago's Mandatory COVID-19 Vaccination **Policy**," which Policy including the reporting requirements.

27. On September 27, 2022, Defendant, by Nance-Holt, on information and belief in

---

[1]Plaintiff wishes to emphatically make clear that the above screenshot says "exemption for the City of Chicago's Mandatory COVID-19 Vaccination **_Policy_**," which includes all aspects of the Policy including the reporting requirements.

4

conjunction with Helmold, Carbonneau, and Ferman, terminated Plaintiff for his alleged

failure to follow the COVID-19 Vaccination Policy, including for failure to report his vaccination

status on the Portal. However, the Portal and reporting requirements were part of the Vaccination

Policy, from which Plaintiff was exempted.

28. Similarly-situated co-workers of Plaintiff were asked to report their vaccination status

and refused to do so because in late 2021 and throughout 2022 numerous fire teams were asked to

report their COVID-19 status on the Portal and to be vaccinated, such teams refused to immediately

do so, and the City did not terminate employees on such teams.

29. Defendant Chicago's termination notice to Plaintiff specifically stated that he was being

terminated for violation of the Vaccination Policy, for which Plaintiff was exempted because the

exemption was "from the City of Chicago's Mandatory COVID-19 Vaccination Policy," as follows:

CAPTAIN (EMT) TEBBENS
File# 17443

You are hereby notified that by orders of the Fire Commissioner you are terminated from the Chicago Fire
Department.   Your discharge is pursuant to the following violations:

- City of Chicago COVID-19 Vaccination Policy, Chicago Fire Department Memo M-110-21 (City of
  Chicago COVID-19 Vaccination Status Reporting Requirement, 10/12/21)
- City of Chicago COVID-19 Vaccination Policy, Chicago Fire Department Memo M-127-21 (City of
  Chicago COVID-19 Vaccination Policy Update, 12/17/21)
- Section 1.24 (per G.O. 13-007) of the Code of Professional Conduct of the Chicago Fire Department:
  1.24

Your discharge is effective as of September 27, 2022.

30. Plaintiff, though, through this religious exemption, had been relieved from all of the

foregoing requirements, and the Policy as a whole, because his exemption exempted him from the

Policy as whole, including the reporting requirements.

31. Defendant Nance-Holt made the decision to terminate Plaintiff in conjunction with

Defendants Ferman, Helmold, and Carbonneau, the latter being in Plaintiff's chain-of-command

and necessarily participating in Plaintiff's termination as a result.

5

32. As a result of his termination, Plaintiff has lost all pay and benefits he had been earning as Fire Captain.

## ADMINISTRATIVE PREREQUISITES

33. On January 24, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, that his September 27, 2022 termination constitutes religious discrimination within the meaning of Title VII.

34. Plaintiff's EEOC charge was cross-filed with the Illinois Department of Human Rights (IDHR) and given Charge Number 2023CR1607.

35. On May 23, 2023, Plaintiff received a right-to-sue letter from the EEOC.

36. On June 9, 2023, Plaintiff received a right-to-sue letter from the Illinois Department of Human Rights.

37. A true and accurate copy of his EEOC Charge and right-to-sue letters from the IDHR is attached hereto as Group Exhibit 1.

## COUNT 1: TITLE VII RELIGIOUS DISCRIMINATION
### (Plaintiff v. Defendant City of Chicago)

38. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 37 of this complaint as if fully set forth herein.

39. "Title VII prohibits employers 'from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012).

40. Under Title VII, religion "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

41. To establish a prima facie case of religious discrimination "based on an employer's failure to provide reasonable accommodation, a plaintiff 'must show (i) that the observance or practice conflicting with an employment requirement is religious in nature, (ii) that he called the

religious observance or practice to his employer's attention, and (iii) that the religious observance or practice was the basis for his discharge or other discriminatory treatment.'" *Porter*, 700 F.3d 944 at 951.

42. "Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any reasonable accommodation would result in undue hardship." *Id.* Notwithstanding that Defendant approved Plaintiff's exemption from the COVID-19 Vaccination Policy, as to the entire policy because the exemption was "from the City of Chicago's Mandatory COVID-19 Vaccination Policy," on September 27, 2022, Defendant, by the actions of Nance-Holt, Helmold, Ferman, and Carbonneau terminated Plaintiff for his alleged failure to follow the COVID-19 Vaccination Policy.

43. While the City granted Plaintiff's religious exemption on paper; in fact, it turned around later and fired him for not complying with the COVID-19 Vaccination Policy in a way that burdened his right to free exercise of religion in at least the following ways:

      a. The document was not generally applicable and it selectively burdened Plaintiff because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status on the Testing Portal and to be vaccinated, such teams refused to immediately do so, and the City did not terminate employees on such teams. Instead, only Plaintiff was terminated for not being vaccinated and not reporting his status on the portal, while other non-reporting and non-vaccinated fire employees were not terminated.

      b. At all times, any testing and reporting requirement presents a burden on Plaintiff's exercise of religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has given an immune system that is requisite on its own as a shield against illness (including COVID-19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing and reporting, acts over and above the God-given immune systems, constitutes a breach of

7

faith between Plaintiff and God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe as a matter of faith, rather than as a matter of testing and reporting.

      c.   Termination of Plaintiff is not the least restrictive means of furthering any governmental compelling interest in controlling COVID-19 and protecting the public as least restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii) sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off work after exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, and (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker.[2]

      d.   <u>Plaintiff's exemption request was granted as to the Policy as a whole, after which the City fired Plaintiff for violating the same Policy to which they granted him an exemption; such is discrimination for his religious accommodation request.</u>

44. Based upon Plaintiff's termination, the City failed to reasonably accommodate Plaintiff's sincerely-held religious beliefs as articulated at least in his Exemption Request in that, while it granted his Exemption Request on February 28, 2022, it nonetheless later terminated Plaintiff on September 27, 2022 for failing to follow the COVID-19 Vaccination Policy.

45. No undue hardship exists that would prevent the City from reasonably Accommodating Plaintiff on religious grounds.

46. By Defendant City's action in terminating him, Plaintiff has lost all benefits and emoluments of employment, including job loss, lost pay, and lost benefits.

---

[2] An analogous proposal was found to be a less restrictive means in *Thomas v. Maricopa County Community College District*, 2021 WL 5162538 (D. Ariz. 2021) in the education context involving swapping vaccinated and unvaccinated students. *Id.* at *8.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant City of Chicago, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

### COUNT 2: DEPRIVATION OF FIRST AMENDMENT RIGHT TO FREELY EXERCISE RELIGION VIA 42 U.S.C. § 1983
(Plaintiff v. Defendants Chicago, Nance-Holt, Ferman, Helmold, and Carbonneau)

47. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 37 of this complaint as if fully set forth herein.

48. The First Amendment's Free Exercise Clause provides that no law will prohibit the free expression of religion. U.S. Const. amend. I.

49. "The Free Exercise Clause, however, is not absolute: laws that incidentally burden particular religious practices do not violate the Free Exercise Clause as long as they are neutral and generally applicable." *Filinovich v. Claar*, 2006 WL 1994580, *3 (N.D. Ill. 2006).

50. "[F]acially neutral rules that have the practical effect of covertly suppressing particular religious beliefs" are prohibited by the Free Exercise Clause of the First Amendment. *Filinovich* at *4; *Bowen v. Roy*, 476 U.S. 693, 703 (1986). "Thus, if a rule adversely impacts only the practices or beliefs of a particular group, without identifying any legitimate purpose for the rule, the rule is not neutral." *Id.* (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993). "In a similar vein, laws are not generally applicable if they selectively impose burdens only on conduct that is motivated by religious beliefs." *Id.*

51. "[T]he Free Exercise Clause [ ] recognizes the value of religious training, teaching and observance and, more particularly, the right of every person to freely choose his own course with reference thereto, free of any compulsion from the state." *Sch. Dist. of Abington Township, Pennsylvania*

9

*v. Schempp,* 374 U.S. 203, 222 (1963). Consequently, government actors are prohibited from exerting "any restraint on the free exercise of religion." *Id.* at 222-23. To state a claim under the Free Exercise clause, plaintiffs "must show the coercive effect of the enactment [or government invasion] as it operates against [her] in the practice of [her] religion." *Id.* at 223; *see also Harless v. Darr,* 937 F. Supp. 1339, 1347 (S.D.Ind.1996); *Olojo v. Kennedy-King Coll.,* No. 05 C 6234, 2006 WL 1648441, at *5 (N.D. Ill. June 7, 2006).

52. "Under the least restrictive means test, the government must show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Brush & Nib Studio, LC,* 448 P.3d at 923 (internal quotation marks omitted). The government need not show that there are no "conceivable" less restrictive means, "but only that the proposed alternatives are ineffective or impractical." *Id.* (internal quotation marks omitted). "This is a focused inquiry, requiring the government to establish that applying the law in the *particular circumstances* is the least restrictive means." *Id.* (internal quotation marks omitted). This standard amounts to "the most demanding test known to constitutional law." *City of Boerne v. Flores,* 521 U.S. 507, 534, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997); *Thoms v. Maricopa Cnty. Cmty. Coll. Dist.,* No. CV-21-01781-PHX-SPL, 2021 WL 5162538, at *7 (D. Ariz. Nov. 5, 2021)

53. In *Troogstad v. City of Chicago*, 571 D.Supp.3d 901, 917 (N.D. Ill. 2021), the Court stated that "if a particular employee is denied a religious exemption, she may challenge that denial, based on the particular facts of the her case, as a violation of her free exercise rights."

54. The document titled "City of Chicago COVID-19 Vaccination Policy" was applied to Plaintiff, who had a sincerely-held religious belief.

55. While the City granted Plaintiff's religious exemption on paper; in fact, it turned around later and fired him for not complying with the COVID-19 Vaccination Policy in a way that burdened his right to free exercise of religion in at least the following ways:

10

a.   The document was not generally applicable and it selectively burdened Plaintiff because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status on the Testing Portal and to be vaccinated, such teams refused to immediately do so, and the City did not terminate employees on such teams. Instead, only Plaintiff was terminated for not being vaccinated and not reporting his status on the portal, while other non-reporting and non-vaccinated fire employees were not terminated.

b.   At all times, any testing and reporting requirement presents a burden on Plaintiff's exercise of religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has given an immune system that is requisite on its own as a shield against illness (including COVID-19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing and reporting, acts over and above the God-given immune systems, constitutes a breach of faith between Plaintiff and God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe as a matter of faith, rather than as a matter of testing and reporting.

c.   Termination of Plaintiff is not the least restrictive means of furthering any governmental compelling interest in controlling COVID-19 and protecting the public as least restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii) sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off work after exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, and (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker.

d.   Plaintiff's exemption request was granted as to the Policy as a whole, after which the City fired Plaintiff for violating the same Policy to which they granted him an exemption; such is discrimination for his religious accommodation request.

11

56. Based on the foregoing, the document titled "City of Chicago COVID-19 Vaccination Policy" was not generally applicable and, accordingly, its application to Plaintiff violated his First Amendment right to the free exercise of religion.

57. By Defendants Nance-Holt, Helmold, Ferman, and Carbonneau's actions in terminating him, Plaintiff has lost all benefits and emoluments of employment, including job loss, lost pay, and lost benefits.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all available and appropriate relief with interest, including special and compensatory damages in an amount up to $2,500,000 or as determined by a jury, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 3: DECLARATORY JUDGMENT THAT PLAINTIFF'S TERMINATION IS UNLAWFUL
### (Plaintiff v. Defendant City)

58. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 37 of this complaint as if fully set forth herein.

59. Illinois statute authorizes courts to make "binding declarations of rights, having the force of final judgments. . ." 735 ILCS 5/2-701, *et seq.*

60. In or about October 2021, a document titled "City of Chicago COVID-19 Vaccination Policy" began circulating among City of Chicago employees and officials as purportedly City policy. The document, which was introduced into the EEOC record by City, bears no indicia of lawful enactment or signature, is as follows:

**City of Chicago COVID-19 Vaccination Policy**

I. **Purpose**

Consistent with its duty to provide and maintain a workplace that is free of recognized hazards, the City of Chicago ("City") has adopted this policy to safeguard the health and well-being of employees, and the residents that spend time in our facilities or interact with City employees as they receive City services. This policy is intended to comply with all federal, state, and local laws. All employees must continue to comply with any applicable safety requirements related to COVID-19.

II. **Scope and Applicability**

This Policy applies to all City employees, personnel of contractors and vendors who have regular direct contact with, or regularly work in close proximity to, City employees, and volunteers. It does not apply to visitors.

III. **Limitations**

Nothing in this Policy is intended to nor shall be construed to provide a private right of action against the City or any of its employees. Furthermore, no part of this Policy shall be construed to create contractual or other rights, obligations, or expectations.

IV. **Policy**

A. Effective October 15, 2021, City employees, as a condition of employment, and personnel of contractors and vendors as outlined in Section II., must either be fully vaccinated against COVID-19 or undergo COVID-19 testing as set forth in Section IV.B. You are considered fully vaccinated 14 days after receiving the final dose of a two-shot vaccine (Moderna or Pfizer) or a dose of a one-shot vaccine (Johnson & Johnson). All City employees who are fully vaccinated by October 15, 2021 shall receive one (1) personal day that must be used by June 30, 2022. The personal day granted by this Policy shall not count toward the carryover day limit contained in an employee's applicable collective bargaining agreement.

B. Employees, volunteers, and contractors who are covered by this policy who are not vaccinated, for reasons including but not limited to verified medical conditions or restrictions or sincerely held religious beliefs (as discussed in Section VI), must undergo COVID-19 testing on a twice weekly basis with tests separated by 3-4 days. Employees shall be responsible for obtaining tests on their own time and at no cost to the City and reporting those results in the manner described by Section VII below. This testing option will sunset on December 31, 2021. Thereafter, employees, volunteers, and contractors covered by this policy must be fully vaccinated as a condition of employment unless they have received an accommodation as described in Section VI below.

C. Employees who are not fully vaccinated by December 31, 2021, unless they have received an approved exemption as described in Section VI will be placed in a non -disciplinary no-pay status until they have become fully vaccinated.

D. Employees, volunteers, and contractors covered by this Policy with a medical condition or other medical restrictions that affects their eligibility for a vaccine, as verified by their medical

13

provider, or those employees with a sincerely held religious belief that prohibits them from receiving a vaccine, may request a reasonable accommodation as described in Section VI below.

E. Violations of this policy, including but not limited to, non-compliance with this Section; or providing false or misleading information about vaccination status, test results, or the need for an accommodation; or the failure to test as applicable as discussed in Section VII, will result in disciplinary action up to and including discharge.

V. **Proof of Vaccination**

A. Employees who receive a vaccination are responsible for scheduling and obtaining all recommended doses of an FDA-approved COVID-19 vaccine, a COVID-19 vaccine granted Emergency Use Authorization by the FDA, or the World Health Organization (WHO). Employees shall receive two (2) hours of paid leave time for each required dose of a COVID-19 vaccine.

B. All employees, volunteers, and contractors who are covered by this policy must report their vaccination status through the COVID-19 Vaccination Portal no later than October 15, 2021 , with the following information:
   - The type of vaccine obtained (Moderna, Pfizer, or Johnson & Johnson);
   - Date of first dose of vaccine;
   - Date of second dose of vaccine for a two-shot vaccine;
   - Declaration that the information submitted is true and correct; and
   - Documentation verifying proof of vaccination status. Proof of vaccination can include a copy of the CDC COVID-19 Vaccination Record Card, documentation of vaccine from the employee's healthcare provider, or documentation issued by the State of Illinois by going to https://idphportal.illinois.gov.

C. Employees hired by the City after the effective date of this policy must be fully vaccinated by their date of hire or submit to the regular testing protocol outlined in Section IV, as a condition of employment. Proof of vaccination will be required prior to the employee's start date unless the employee has received an accommodation as outlined in Section VI of this Policy. New hires who are not fully vaccinated at the time of hire, and have not received an accommodation as outlined in Section VI, must submit to regular testing outlined in section IV until they are fully vaccinated. Failure of newly hired employees to become fully vaccinated will result in their termination from employment unless they have received an accommodation as outlined in Section VI.

D. Any employee who becomes fully vaccinated after October 15, 2021 must report their change in vaccination status in the manner prescribed in Section V.B. above within three (3) business days.

E. In cases where the City has reason to believe that the vaccination information provided by the employee was not true or accurate, an employee may be required to submit verification of vaccination from a state immunization information system.

F. Employees who have not reported their vaccination status by October 15, 2021 will be placed in a non-disciplinary no-pay status until they have reported their vaccination status.

G. All employees must continue to comply with masking, testing, and other safety requirements as outlined in other City policies and directives.

VI.   **Accommodations**

  A.  Disability and Medical Accommodations
     1.  In accordance with the City's Reasonable Accommodation Policy, the City provides
       reasonable accommodations to qualified persons with a disability that enables them to
       perform the essential functions of their job unless such an accommodation would create an
       undue hardship or the accommodation would result in a direct threat to the health and safety
       of the employee or others. Requests for accommodations will be made on a case-by-case
       basis consistent with existing procedures for reasonable accommodation requests.
     2.  Employees who believe they need an accommodation regarding this policy because of a
       disability or a medical condition may request a reasonable accommodation through the
       Department of Human Resources. A form for requesting such an accommodation is attached
       to this policy as Exhibit A.
  B.  Religious Accommodations
     1.  The City provides religious accommodations to employees with sincerely held religious
       beliefs unless such an accommodation would create an undue hardship. Requests for
       accommodations will be made on a case-by-case basis consistent with existing procedures for
       reasonable accommodation requests.
     2.  Employees who believe they need an accommodation regarding this policy because of a
       sincerely held religious belief may request a reasonable accommodation through the
       Department of Human Resources. A form for requesting such an accommodation is attached
       to this policy as Exhibit B.

VII.   **Reporting Test Results**

  A.  Employees, volunteers, and contractors who are covered by this policy who are not fully
     vaccinated by October 15, 2021, for reasons including but not limited to verified medical
     conditions or restrictions or sincerely held religious beliefs (as discussed in Section VI), shall be
     required to undergo  COVID-19 testing on a twice weekly basis with tests separated by 3-4 days.
     Employees shall be responsible for obtaining tests on their own time and at no cost to the City.
  B.  Employees must report their test results through the COVID-19 Employee Testing Portal.
     Employees will be required to submit the following information:
     1.  The date of the test;
     2.  The type of test obtained;
     3.  The results of the test;
     4.  A declaration that the information provided is true and accurate; and,
     5.  A copy of their test results.
  C.  In cases where the City has reason to believe that the testing information provided by the
     employee was not true or accurate, an employee may be required to provide additional
     information, including but not limited, a written statement describing the testing process.
  D.  Employees who fail to report test results as required by this section will be placed in a non-
     disciplinary no-pay status until they report their test results.

VIII.   **Vaccination Encouragement**

     The City and signatory unions agree to encourage and support the vaccination of City employees.

15

IX.   **City of Chicago Sick Leave Policy Addendum**

The City of Chicago Sick Leave Policy Addendum, attached to this policy as Exhibit C, shall remain in effect until March 31, 2022.

X.   **Non-Retaliation**

The City prohibits retaliation against any employee seeking an accommodation as outlined in Section VI. The City further prohibits retaliation for reporting violations of this policy or any other health and safety concern. Employees have the right to report work-related injuries and illnesses and the City will not tolerate retaliation against employees for reporting work-related injuries or illnesses or good faith health and safety concerns.

XI.   **Policy Modification**

The parties recognize that public health guidelines regarding COVID-19 and COVID-19 vaccines are rapidly changing as new information becomes available, further research is conducted, new variants develop and new preventative measures become available. As a result, it is appropriate that representatives of Labor and Management continue to meet and discuss the City's response to COVID-19 and this Policy. Upon request, the parties will establish a working group to discuss the results of the mandatory vaccination of employees. The working group may consider available science, public health data, vaccination rates of both City employees and residents, positivity rates of COVID-19, the availability and/or need for booster shots and testing. This working group may make recommendations related to the Policy which will be considered by the City. The working group will be comprised of three representatives of the labor unions and three representatives appointed by the City, one of whom will be a health care professional from the Chicago Department of Public Health and shall meet monthly, unless the working group mutually agree to meet more or less frequently. The City and the Unions reserve the right to seek modification of this policy to adapt to changing circumstances and business needs consistent with their commitment to maintaining a safe and healthy workplace.

61. The City of Chicago COVID-19 Vaccination Policy has not been validly-enacted as policy by any government official or body with power to enact it.

62. The Mayor did not issue the City of Chicago COVID-19 Vaccination Policy by executive order.

63. The City Council did not pass the document titled City of Chicago COVID-19

16

Vaccination Policy.

64. The Department of Public Health did not enact the document titled City of Chicago COVID-19 Vaccination Policy.

65. The CFD did not enact the document titled City of Chicago COVID-19 Vaccination Policy and, indeed, it could not do so because the document on its face purports to apply to all City employees.

66. The Department of Human Resources did not pass the document titled City of Chicago COVID-19 Vaccination Policy.

67. No other governmental body or official took action to enact the document titled City of Chicago COVID-19 Vaccination Policy as bona fide City policy.

68. There is no signed version of the policy showing who enacted it, at least that Plaintiff has ever seen; indeed, the version the City introduced at the EEOC is depicted above and contains no signatures whatsoever.

69. Instead, the City of Chicago COVID-19 Vaccination Policy has merely been circulated and represented as City policy, but without it having any lawful pedigree from a source with power to create news terms and conditions of employment for Chicago employees.

70. That is, the document titled City of Chicago COVID-19 Vaccination Policy is little more than a document with words on it being used as City policy when, in fact, no legal authority has properly passed, pronounced, or enacted the document as City policy through lawful means.

71. This same document called the City of Chicago COVID-19 Vaccination Policy was used as the basis to terminate Plaintiff, yet the document itself has not been duly enacted by any appropriate authority within the City of Chicago as *bona fide* policy.

72. Without a lawful pedigree, the document is not *bona fide* City policy, and cannot be used as a basis to terminate Plaintiff.

73. Plaintiff has a tangible interest in the outcome of this suit in that he lost his employment, salary, and benefits on the basis of the document titled City of Chicago COVID-19 Vaccination Policy.

74. Defendant City has an opposing legal interest in the outcome of this suit in that it terminated Plaintiff, seeks to maintain his termination, and, presumably, seeks to defend the legal validity of the document titled City of Chicago COVID-19 Vaccination Policy.

75. Plaintiff suffered damages as a result of Defendant City applying the document titled City of Chicago COVID-19 Vaccination Policy to him, including lost pay and benefits.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant City of Chicago, declare that Plaintiff's termination is unlawful because the document titled City of Chicago COVID-19 Vaccination Policy has no lawful pedigree and was not lawfully applied to support Plaintiff's termination as a result, and enter and order all available legal and equitable relief, including reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 4: RELIGIOUS DISCRIMINATION UNDER IHRA
### (Plaintiff v. Defendant City of Chicago)

76. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 37 of this complaint as if fully set forth herein.

77. "[D]iscrimination and retaliation claims brought pursuant to IHRA are evaluated under the same standards and tests as those brought under Title VII." *Sabet v. City of Chicago*, 2020 WL 832360 (N.D. Ill. 2020).

78. To establish a prima facie case of religious discrimination "based on an employer's failure to provide reasonable accommodation, a plaintiff 'must show (i) that the observance or practice conflicting with an employment requirement is religious in nature, (ii) that he called the

18

religious observance or practice to his employer's attention, and (iii) that the religious observance or practice was the basis for his discharge or other discriminatory treatment." *Porter*, 700 F.3d 944 at 951.

79. "Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any reasonable accommodation would result in undue hardship." *Id.*

80. Notwithstanding that Defendant approved Plaintiff's exemption from the COVID-19 Vaccination Policy, on September 27, 2022, Defendant, by the actions of Nance-Holt, Helmold, Ferman, and Carbonneau terminated Plaintiff for his alleged failure to follow the COVID-19 Vaccination Policy.

81. While the City granted Plaintiff's religious exemption on paper; in fact, it turned around later and fired him for not complying with the COVID-19 Vaccination Policy in a way that burdened his right to free exercise of religion in at least the following ways:

a. The document was not generally applicable and it selectively burdened Plaintiff because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status on the Testing Portal and to be vaccinated, such teams refused to immediately do so, and the City did not terminate employees on such teams. Instead, only Plaintiff was terminated for not being vaccinated and not reporting his status on the portal, while other non-reporting and non-vaccinated fire employees were not terminated.

b. At all times, any testing and reporting requirement presents a burden on Plaintiff's exercise of religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has given an immune system that is requisite on its own as a shield against illness (including COVID-19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing and reporting, acts over and above the God-given immune systems, constitutes a breach of

19

faith between Plaintiff and God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe as a matter of faith, rather than as a matter of testing and reporting.

       c.   Termination of Plaintiff is not the least restrictive means of furthering any governmental compelling interest in controlling COVID-19 and protecting the public as least restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii) sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off work after exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, and (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker.[3]

       d.   <u>Plaintiff's exemption request was granted as to the Policy as a whole, after which the City fired Plaintiff for violating the same Policy to which they granted him an exemption; such is discrimination for his religious accommodation request.</u>

82. Based upon Plaintiff's termination, the City failed to reasonably accommodate Plaintiff's sincerely-held religious beliefs as articulated at least in his Exemption Request in that, while it granted his Exemption Request on February 28, 2022, it nonetheless later terminated Plaintiff on September 27, 2022 for failing to follow the COVID-19 Vaccination Policy.

83. No undue hardship exists that would prevent the City from reasonably accommodating Plaintiff on religious grounds.

84. By Defendant City's action in terminating him, Plaintiff has lost all benefits and emoluments of employment, including job loss, lost pay, and lost benefits.

---

[3] An analogous proposal was found to be a less restrictive means in *Thomas v. Maricopa County Community College District*, 2021 WL 5162538 (D. Ariz. 2021) in the education context involving swapping vaccinated and unvaccinated students. *Id.* at *8.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant City of Chicago, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 5: ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT
(Plaintiff v. Defendant City of Chicago)

85. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 37 inclusive as if fully restated in this Count.

86. Illinois' Religious Freedom Restoration Act (IRFRA), 775 ILCS 35/1, *et seq.*, provides that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15.

87. IRFRA further provides that "If a person's exercise of religion has been burdened in violation of this Act, that person may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against a government. A party who prevails in an action to enforce this Act against a government is entitled to recover attorney's fees and costs incurred in maintaining the claim or defense." 775 ILCS 35/20.

88. While the City granted Plaintiff's religious exemption on paper; in fact, it turned around later and fired him for not complying with the COVID-19 Vaccination Policy in a way that burdened his right to free exercise of religion in at least the following ways:

    a.   The document was not generally applicable and it selectively burdened Plaintiff because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status on the Testing Portal and to be vaccinated, such teams refused to immediately do so, and

the City did not terminate employees on such teams. Instead, only Plaintiff was terminated for not being vaccinated and not reporting his status on the portal, requirements from which he was exempted, while other non-reporting and non-vaccinated fire employees were not terminated.

b.   At all times, any testing and reporting requirement presents a burden on Plaintiff's exercise of religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has given an immune system that is requisite on its own as a shield against illness (including COVID-19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing and reporting, acts over and above the God-given immune systems, constitutes a breach of faith between Plaintiff and God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe as a matter of faith, rather than as a matter of testing and reporting.

c.   Termination of Plaintiff is not the least restrictive means of furthering any governmental compelling interest in controlling COVID-19 and protecting the public as least restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii) sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off work after exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker; and, (x) allowing Plaintiff to work with the CFD's Medical Section directly.

d.   Plaintiff's exemption request was granted as to the Policy as a whole, after which the City fired Plaintiff for violating the same Policy to which they granted him an exemption; such is discrimination for his religious accommodation request.

22

89. Plaintiff has been damaged as a result of the termination, including by loss of job, pay, benefits, and incurring attorneys' fees.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant City of Chicago, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

### COUNT 6: SUBSTANTIVE DUE PROCESS DEPRIVATION FOR RIGHT TO NONDISCLOSURE OF PRIVATE MEDICAL INFORMATION
(Plaintiff v. Defendant City of Chicago)

90. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 37 inclusive as if fully restated in this Count.

91. "The courts of appeals, including this court, have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information—information that most people are reluctant to disclose to strangers— and have held that the right is defeasible only upon proof of a strong public interest in access to or dissemination of the information. See, e.g., *Denius v. Dunlap,* 209 F.3d 944, 955–58 (7th Cir.2000); *Anderson v. Romero,* 72 F.3d 518, 521–22 (7th Cir.1995); *Nelson v. NASA,* 530 F.3d 865, 877–82 (9th Cir.2008), cert. granted, ––– U.S. ––––, 130 S.Ct. 1755, 176 L.Ed.2d 211 (2010); *Summe v. Kenton County Clerk's Office,* 604 F.3d 257, 270–71 (6th Cir.2010); *Aid for Women v. Foulston,* 441 F.3d 1101, 1116–17 (10th Cir.2006); *Zaffuto v. City of Hammond,* 308 F.3d 485, 488–91 (5th Cir.2002); *Norman–Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1269–70 (9th Cir.1998); *Eastwood v. Department of Corrections,* 846 F.2d 627, 631 (10th Cir.1988); *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105, 114–15 (3d Cir.1987); *Thorne v. City of El Segundo,* 726 F.2d 459, 468 (9th

23

Cir.1983); Helen L. Gilbert, Comment, "Minors' Constitutional Right to Informational Privacy," 74 *U. Chi. L. Rev.* 1381, 1382–84 (2007)." *See generally Wolfe v. Schaefer*, 619 F.3d 782, 785 (2010).

92. Plaintiff at all times had a constitutional right to the privacy of his private medical information, including his vaccination status, vaccination testing, and vaccination testing results.

93. Defendant Chicago, by its (otherwise unlawful and invalid) adoption of the "City of Chicago COVID-19 Vaccination Policy" and Fire Department Memos M-110-21 and M-127-21, and then by terminating Plaintiff for not following the reporting requirements, from which Plaintiff had been exempted, deprived Plaintiff of his right medical privacy as recognized in at least the cases cited above and others in this judicial district.

94. Importantly, by terminating Plaintiff for not following this policy is wherein lies the deprivation, *to wit*, by conditioning Plaintiff's right to continued employment on him relinquishing his constitutional right to medical privacy.

95. The following section of the policy, on its face, violated Plaintiff's right to medical privacy:

   B. Employees must report their test results through the COVID-19 Employee Testing Portal. Employees will be required to submit the following information:
      1. The date of the test;
      2. The type of test obtained;
      3. The results of the test;
      4. A declaration that the information provided is true and accurate; and,
      5. A copy of their test results.

96. The foregoing section would have required Plaintiff to disclose at least the (1) type of testing received, (2) current COVID status, which is indisputably medical and medical testing information.

97. The reporting requirement insists that Plaintiff disclose his medical information to City of Chicago personnel that he does not want to disclose, on pain of termination if he fails to do so, which is what occurred, even though Plaintiff has been exempted from the Policy including its reporting requirements.

98. Disclosure of this medical information also put Plaintiff at risk for having his private medical

information disclosed in data breaches and/or through improper access, which Plaintiff's union

reported as follows:



# CHICAGO FIRE FIGHTERS UNION

International Association of Fire Fighters Local 2 A.F.L.-C.I.O.-C.L.C. Organized August 1, 1901

440 West 43rd Street     Chicago, Illinois 60609-2715     (773) 536-0450     FAX: (773) 536-8117

www.iaff-local2.org or
www.chicagofirefightersunion.org

**President**
James T. Tracy, III

**Vice-President**
Patrick Cleary

**Secretary-Treasurer**
Mark C. Egan

**Trustees**

**Directors**

**Contract Enforcement**
Michael Butkus

**Public Relations**
Patrick J. Quane, Jr.

**Political Action**
Joseph A. Senorski

**Emergency Medical Services**
Anthony Snyder

**Business Agents**
*District 1*
John E. Fitzpatrick
*District 2*
William B. Murphy
*District 3*
Timothy F. Ryan
*District 4*
James M. McDonald
*District 5*
Martin F. Doherty
*District 6*
Thomas J. Cody

**Sergeant-At-Arms**
Clarence E. Norwood, Sr.

Dear David Johnson,

On March 1, 2022, the Chicago Fire Fighters Union, Local No. 2 informed the City representatives at the parties' bargaining session that personal identifying information of uniformed service members of the Chicago Fire Department was accessible to the public through the City's Sharepoint platform. The information accessible through Sharepoint included, but was not limited to, personal health information, members' social security numbers, and members' home addresses.

As a result of this data breach Local 2 is, again, requesting the City take steps to ensure all members do not suffer any harm. This should include, at a minimum, credit monitoring for a two-year period for all CFD employees and all retirees. It is necessary to provide credit monitoring to retirees as it was discovered former Commissioner Jose Santiago's social security number was accessible to the public.

Please confirm that the City has safeguarded the members' personal identifying information to prevent future disclosures. Local 2 expects City representatives will provide confirmation that credit monitoring will be implemented and additional necessary preventative measures will be taken to prevent CFD members from being harmed. As I am sure you are aware, this is time sensitive and needs to be acted upon expeditiously.

Sincerely,
CHICAGO FIRE FIGHTERS UNION,
Local No. 2

James T. Tracy, III
President

CC:     Annastasia Walker
        Cicely Porter
        Evan Haim
        James Sullivan
        Brian Casey
        Brian Helmold
        Annette Nance-Holt
        James Franczek
        George Robinson
        Robert S. Sugarman
        Beniamino Capellupo
        Michael Butkus

99. By exposure of Plaintiff's PHI to City personnel without his consent, and the risk of larger public and actual public access, Plaintiff's forced disclosures of his private medical information deprived him of substantive due process to medical privacy.

100.　　　　As a result of the City' enforcement of this policy and Plaintiff's termination, Plaintiff has suffered damages, to include job loss, lost pay, lost benefits, and damages for emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant City of Chicago, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant judgment in his favor on all counts and order the relief sought herein.

### JURY DEMANDED AS TO ALL COUNTS

Respectfully submitted,

**ROBERT TEBBENS**

By:　　 */s/ Cass T. Casper*

_____

His Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on September 29, 2023 he caused to be served the foregoing Second Amended Complaint on all counsel of record via this Court's CM/ECF filing system, and that all such counsels are registered e-filers.

*/s/ Cass T. Casper*

_____